FILED
2021 SEP 29 PM 3:14
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID P. and L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, MORGAN STANLEY CHIEF HUMAN RESOURCES OFFICER and THE MORGAN STANLEY MEDICAL PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00225-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, and is before the court on the parties' cross-motions for summary judgment. Plaintiffs' complaint alleges two causes of action: (1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) ("ERISA claim") and (2) violation of the Mental Health Parity and Addiction Equity Act under 29 U.S.C. § 1132(a)(3) ("Parity Act claim"). Defendants United Healthcare Insurance Company ("United"), Morgan Stanley Chief Human Resources Officer, and the Morgan Stanley Medical Plan (collectively, "Defendants") moved for summary judgment on both causes of action on December 4, 2020. Plaintiffs David P. and L.P. (collectively, "Plaintiffs") moved for partial summary judgment on the ERISA claim on December 4, 2020, and requested an extension of the dispositive motion deadline. Defendants agreed to withdraw their summary judgment motion as it related to the Parity Act and the parties continued to brief their cross-motions

for summary judgment on the Parity Act claim. Defendants moved for partial summary judgment on the Parity Act claim on May 14, 2021. Plaintiffs filed their cross-motion for partial summary judgment on the Parity Act claim on May 18, 2021.

## BACKGROUND

This dispute involves the denial of benefits allegedly due to Plaintiffs under their ERISA employee group health benefit plan, the Morgan Stanley Medical Plan ("the Plan"). Morgan Stanley is the Plan Sponsor and Morgan Stanley's Chief Human Resources Officer is the Plan Administrator. Rec. 206. United administers claims for mental health and substance abuse benefits under the Plan through its Mental Health and Substance Abuse Claims Administrator, United Behavioral Health ("UBH"). *Id.* 268. Under the Plan, UBH has discretionary authority to interpret Plan provisions, set coverage criteria consistent with the Plan, and make decisions regarding specific claims for benefits and appeals of benefit denials. *Id.* 210. David P. was a Plan participant at all times relevant to the claims in this case and his daughter, L.P., was a Plan beneficiary. Compl. ¶ 5.

Plaintiffs sought care for L.P.'s mental health and substance abuse conditions at two successive Residential Treatment Centers ("RTCs"), first at Summit Achievement ("Summit") in Maine and then at Uinta Academy ("Uinta") in Utah. *Id.* ¶ 6. L.P. received care at Summit from November 28, 2016, to February 13, 2017, and at Uinta from February 14, 2017, to November 30, 2017. *Id.* UBH denied benefits for the duration of L.P.'s stay at Summit. UBH elected to cover the first eight days of L.P.'s treatment at Uinta but denied benefits for the remainder of her stay at Uinta. *Id.* ¶¶ 20, 36-37. Plaintiffs contend that UBH's denial of benefits caused them to pay over $177,000 in unreimbursed, out-of-pocket expenses. *Id.* ¶ 62.

## I.      THE PLAN

The Plan offers benefits for medically necessary mental health and substance abuse care. Rec. 213. The Plan defines medically necessary services as those

- Provided for the diagnosis, treatment, cure or relief of a health condition, illness, injury, or disease;
- Not for experimental, investigational or cosmetic purposes;
- Necessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, injury, disease or its symptoms;
- Within generally accepted standards of medical care in the community; and
- Not solely for the convenience of the employee, the employee's family or the provider.

*Id.* In general, the Plan excludes coverage for "[a]ny services, treatments or supplies that are not medically necessary for the prevention, diagnosis or treatment of an illness, injury or pregnancy." *Id.* 74.

UBH maintains Level of Care Guidelines ("UBH Guidelines") that provide a set of objective criteria to determine medical necessity, thus standardizing coverage determinations. *Id.* 433. The UBH Guidelines define a Residential Treatment Center as a "sub-acute facility-based program which delivers 24-hour/7-day assessment and diagnostic services, and active behavioral health treatment to members who do not require the intensity of nursing care, medical monitoring and physician availability offered in Inpatient." *Id.* 430. Under its delegated authority to interpret the Plan and develop claims administration criteria, UBH uses two sets of medical necessity criteria to make benefits determinations for RTC treatment. In addition to general eligibility requirements, UBH's admissions criteria for RTC treatment requires claimants to meet each of the following:

1. The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care, *and*
2. The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care, *and*
3. Co-occurring behavioral health and medical conditions can be safely managed, *and*

4. Services are consistent with generally accepted standards of clinical practice, with services backed by credible research, and with Optum's best practice guidelines, *and*

5. There is a reasonable expectation that service(s) will improve the member's presenting problems within a reasonable period of time, *and*

6. The member is not in imminent or current risk of harm to self, others, and/or property, *and*

7. The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial factors.

*Id.* 434, 441-42. UBH's continued care criteria for RTC care requires claimants to meet all of the

following to remain in RTC care:

1. The admission criteria continue to be met and active (i.e., a supervised individualized treatment plan) treatment is being provided, *and*

2. The factors leading to admission have been identified and are integrated into the treatment and discharge plans, *and*

3. Clinical best practices are being provided with sufficient intensity to address the member's treatment needs, *and*

4. The member's family and other natural resources are engaged to participate in the member's treatment as clinically indicated, *and*

5. Treatment is not primarily for the purpose of providing custodial care.

*Id.*

## II.   L.P.'S CONDITION

Aside from a diagnosis of Attention Deficit Disorder ("ADD") in fourth grade, L.P. maintained a relatively typical childhood. *Id.* 489. However, when L.P. entered high school, her condition began to deteriorate. She struggled to connect with peers and became increasingly isolated. *Id.* L.P. reported hearing voices in her head and experienced anxiety attacks serious enough that her parents had to pick her up from school. *Id.* She began to cope by self-harming— burning, cutting, and tattooing her skin. *Id.* L.P. increasingly used drugs and alcohol. She brought alcohol to school and began driving while intoxicated. *Id.* 489, 491.

L.P.'s psychologist described her condition prior to being admitted to Summit by saying, "[s]he had numerous episodes of cutting, driving to endanger, being uncooperative and

4

oppositional at home and in the community and has had significant opioid drug involvement." *Id.*
972. In fact, he reported that "[o]n November 5, 2016, [L.P.] cut herself deeply requiring
hospitalization." *Id.* In her psychologist's opinion, "[o]utpatient therapy and
psychopharmacological treatment with [L.P.] and her family were insufficient to address her
emotional, psychological and physical needs." *Id.* Her psychologist recommended hospitalization
"[o]n numerous occasions . . . as [he] feared she might be a danger to herself or others." *Id.*

## III.   L.P.'S TREATMENT

L.P. was admitted to the RTC program at Summit on November 28, 2016. Treatment at
Summit involves daily group therapy sessions, weekly individual counseling, and clinician-
facilitated group therapy. *Id.* 997. A licensed clinical psychologist evaluated her approximately two
weeks after arriving at Summit. *Id.* 1004. The psychologist noted that L.P. had "struggled with
depression, suicidal thoughts, and self-harm" and that she continued to have suicidal thoughts
while at Summit. *Id.* 1007-08. He ultimately diagnosed L.P. with generalized anxiety disorder;
major depressive disorder, recurrent, severe; some emerging traits consistent with borderline
personality disorder; cannabis use disorder; attention-deficit/hyperactivity disorder, combined
presentation; and executive function deficit. *Id.* 1019. Summit developed a set of treatment goals
to assist L.P. in her treatment at Summit. *Id.* 1065-68.

Following his assessment, and considering "the seriousness of these test findings," the
psychologist "strongly recommended that following her discharge from Summit Achievement,
[L.P.] go to a longer-term residential treatment program that can continue addressing each of these
issues in depth." *Id.* 1018-19. L.P.'s Summit therapist also recommended long-term residential
treatment "[d]ue to [L.P.'s] history of self-harm, substance abuse, risky behavior, and recent

identification of emerging Borderline Personality Disorder." *Id.* 991. L.P. was discharged from Summit on February 13, 2017.

Based on the above recommendations, L.P.'s parents placed her at Uinta on February 14, 2017, immediately following her discharge from Summit. *Id.* 813. United approved eight days of treatment at the facility, where L.P.'s preliminary diagnoses included borderline personality disorder, ADHD, depressive disorder, anxiety disorder, and substance abuse disorder. *Id.* 813, 3381. L.P. remained at Uinta, although United denied benefits from February 22, 2017, onward. *Id.* 2634-35.

## IV.    DENIAL OF BENEFITS

Plaintiffs admitted L.P. to treatment at Summit without first seeking approval from UBH. When Plaintiffs submitted a claim for L.P.'s treatment at Summit, Defendants initially denied the claim citing a lack of required preauthorization for the treatment at Summit. *Id.* 532. Plaintiffs appealed, arguing that the Plan did not require preauthorization for residential treatment. *Id.* 524-26. Defendants then issued a level-one denial letter that did not address the preauthorization issue but rather reasoned that

> [t]here is no clinical information received that indicates that your daughter required 24 hour monitoring to treat acute mental health symptoms. She did not want to hurt herself. She did not want to hurt others. It seems that her mood and anxiety symptoms could have been treated in a less intensive setting.

*Id.* 448-49. Following this denial, Plaintiffs submitted an extensive level-two appeal, including a 23-page letter and over 300 pages of supporting documentation. *Id.* 486-808. The letter provided a chronological history of L.P.'s condition and argued that RTC care at Summit was medically necessary, that UBH overlooked L.P.'s substance use disorder diagnosis in making its decision, and that UBH's denial violated the Parity Act. *Id.* 486-508. Defendants denied the appeal in a level-two denial letter, observing that

> [y]ou were admitted to a therapeutic boarding school, Summit Achievement. After reviewing the appeal documents, there was no clinical information provided to support the medical necessity for treatment in a psychiatric residential setting or to document the daily provision of treatment services.

*Id.* 475. Plaintiffs then appealed to an external reviewer, AllMed Healthcare Management, which affirmed UBH's decision. *Id.* 1571-76.

UBH initially authorized L.P. for RTC care at Uinta from February 14, 2017, through February 16, 2017. *Id.* 3450. UBH then extended its approval five additional days, through February 21, 2017. *Id.* 3452. After eight days of covered care, UBH denied all further coverage at Uinta. UBH's initial denial of Plaintiffs' Uinta claim stated that

> [y]our child was admitted for treatment of impaired behaviors. After talking with your child's provider designee, it is noted that your child has made progress and that her condition no longer meets Guidelines for further coverage of treatment in this setting. Your child's mood is more stable. She is participating in her treatment. She is not having any serious mental health issues. She no longer needs the 24/7 care of a residential setting. Your child could continue care in the Mental Health Partial Hospitalization Program setting.

*Id.* 2526. Although there was some confusion about Plaintiffs' appeal, which Defendants appear to have misplaced for a period of time, UBH ultimately allowed Plaintiffs to submit a level-one appeal. Plaintiffs' level-one appeal for the Uinta claim largely mirrored their level-two appeal for the Summit claim. In their level-one denial of Plaintiffs' Uinta claim, Defendants responded with nearly identical language from their initial Uinta denial letter, maintaining the denial of benefits and reasoning that

> [y]our child was admitted for treatment of impaired behaviors and poor coping skills. After reviewing the available clinical information, it was noted that your child had made progress and that her condition no longer met Guidelines for further coverage of treatment in this setting. Your child's mood was more stable. She was participating in her treatment. She was not having any serious mental health issues. She no longer needs the 24/7 care of a residential setting. Your child could continue care in the Mental Health Partial Hospitalization Program setting.

*Id.* 1694-95. Plaintiffs submitted a level-two appeal, attaching the original level-one appeal letter.

*Id.* 3817-22. Defendants again denied Plaintiffs' Uinta claim in its level-two denial letter, stating

that

> [y]ou were admitted for treatment of problems with your mood, behavior, and addiction. After reviewing the available information, it is noted that you had made progress and that your condition no longer met Guidelines for further coverage of treatment in this setting. You were doing better. You were stable from a medical and mental health standpoint. You were not thinking about hurting yourself or others. You were thinking clearly. You were motivated. You were participating in treatment and using the skills learned. You were able to take care of your needs. You were able to go on leaves of absence. You had family support. You did not require 24 hour nursing care. You could have continued care in the Mental Health Partial Hospitalization Program setting.

*Id.* 2306-07. Plaintiffs appealed to an external reviewer, which affirmed UBH's denial of benefits.

*Id.* 2249-53.

In sum, UBH denied benefits for L.P.'s entire stay at Summit. UBH authorized benefits at

Uinta from February 14, 2017, through February 21, 2017, and denied benefits for her Uinta

treatment from February 22, 2017, until November 30, 2017. UBH upheld each denial through two

levels of internal appeals and external reviewers upheld both denials.

## V.   THE PARTIES' ARGUMENTS ON THE ERISA CLAIM

Plaintiffs' ERISA claim arises under 29 U.S.C. § 1132(a)(1)(B), which provides that an

ERISA plan participant or beneficiary may sue "to recover benefits due to him under the terms of

his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." Plaintiffs move for summary judgment and argue that they are entitled

to a reinstatement of benefits for L.P.'s presently uncovered treatment at both Summit and Uinta.

*See* ECF No. 39. Specifically, they assert that UBH wrongfully denied their claims by (1) failing

to consider L.P.'s substance use disorder; (2) wrongfully determining that the relevant treatment

was not medically necessary; (3) failing to engage with the opinions of L.P.'s treating providers;

and (4) failing to articulate how the terms of the Plan applied to L.P.'s medical history. Plaintiffs contend that the appropriate standard of review is *de novo* because of alleged procedural irregularities in UBH's adverse benefits determination process. Finally, Plaintiffs seek an award of prejudgment interest and attorney's fees and costs.

Defendants also move for summary judgment, contending that UBH properly denied benefits because the requested RTC services did not meet the Plan's requirement that the treatment be medically necessary for the claimant. *See* ECF No. 37. Defendants urge the court to apply the arbitrary and capricious standard of review because the Plan vests discretion in UBH to interpret the Plan and make benefits claims determinations, and Plaintiffs have identified insufficient procedural irregularities to deviate from this deferential standard. Defendants further argue that because UBH's denial of benefits was reasonable, Plaintiffs are not entitled to an award of prejudgment interest or attorney's fees and costs.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When both parties move for summary judgment in an ERISA case, the parties have effectively "stipulated that no trial is necessary" and thus "summary judgment is merely a vehicle for deciding the case." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted). In these cases, "the factual determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (citation omitted).

## ANALYSIS

### I.   STANDARD OF REVIEW FOR DENIAL OF BENEFITS CLAIM

The court must first determine what standard of review is appropriate to evaluate UBH's denial of benefits for L.P.'s treatment at Summit and Uinta. Defendants argue that the court must give significant deference to the determinations of UBH's reviewers because UBH has discretionary authority to make coverage decisions under the Plan and it complied with ERISA's procedural requirements. On the other hand, Plaintiffs argue that the court should apply *de novo* review because of alleged procedural deficiencies in Defendants' benefits determination procedure, both in its initial adverse benefits determination and during the appeals process. While this court determines that UBH's denials suffered from a number of serious procedural irregularities that warrant *de novo* review, the defects in UBH's denials of benefits are serious enough to warrant reversal even under an arbitrary and capricious standard.

#### A.   *ERISA's Framework for Judicial Review*

ERISA authorizes Plaintiffs to challenge a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) but fails to specify the standard of review that courts should apply. *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.,* 585 F.3d 1311, 1315 (10th Cir. 2009). The Supreme Court has filled this gap by determining that, in general, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan vests such discretion in the plan administrator, a reviewing court will instead apply "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations

and internal quotation marks omitted). Here, the parties do not dispute that the Plan expressly gives UBH, as the Plan's Mental Health and Substance Abuse Claims Administrator, the discretion to develop criteria and determine whether a claimant is entitled to benefits under the Plan. ECF Nos. 37 at 5-6, 52 at 8-9.

Applying arbitrary and capricious review means that this court will uphold the administrator's determination "so long as it is predicated on a reasoned basis." *Adamson v. Unum Life Ins. Co. of N. Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Further, "[t]he Administrator's decision need not be the only logical one nor even the best one" as long as it is "sufficiently supported by facts within his knowledge." *Finley v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)).

But "the arbitrary and capricious standard of review is not without meaning." *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 705 (10th Cir. 2018) (unpublished). The administrator's decision must be "based upon the record as a whole," and the court "must take into account whatever in the record fairly detracts from its weight." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) (citations, internal quotation marks, and alterations omitted).

Finally, even where a claims administrator has discretion, a court may apply a less deferential standard where a claims administrator's decision fails to comply with ERISA's procedural requirements. *See Rasenack*, 585 F.3d at 1316-17.[1]

---

[1] The court notes the Tenth Circuit has explicitly left open the question of whether the substantial compliance rule still applies under the revised 2002 ERISA regulations and has declined to resolve the issue on several subsequent occasions. *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 827-28 (10th Cir. 2008); *see, e.g.*, *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 800 (10th Cir. 2010) ("We need not decide whether [the] 'substantial compliance' doctrine still applies to the revised regulation at issue here"); *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1152 n.3 (10th Cir. 2009) ("Because Ms. Hancock has failed to show any noncompliance, we need not consider whether substantial compliance is sufficient under the January 2002 revisions of ERISA."); *Rasenack*, 585 F.3d at 1316 ("Because AIG has failed [the] substantial compliance test . . . we need not decide whether a minor violation of the deadlines or other procedural irregularities would entitle the claimant

### B.     *Applicable Standard of Review Here*

As an initial matter, the court rejects Plaintiffs' arguments that Defendants engaged in serious procedural irregularities by failing to reveal the identities and credentials of reviewers. Each of UBH's denial letters was signed by the medical reviewer. Rec. 449, 476, 2527, 1695, 2307. All of the letters indicated that the medical reviewer held an M.D. credential. *Id.* Two of the letters specifically identified the subspecialty of the reviewer as "board certified psychologist" and "board certified adult/child/adolescent psychiatry and neurology." *Id.* 2307, 2527. For appeals, the relevant regulations require that Defendants "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" and "[p]rovide for the identification of medical . . . experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefits determination." 29 C.F.R. § 2560.503-1(h)(3)(iii)-(iv). UBH identified each reviewer by name. UBH's failure to include the specific field of practice for three of the reviewers is the sort of procedural irregularity that "do[es] not rise to the level as to leave the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Amy G. v. United Healthcare*, No. 2:17-cv-00427-BSJ, 2018 WL 2303156, at *4 (D. Utah May 21, 2018). But Defendants' failure to address L.P.'s substance use disorder and other serious procedural irregularities do raise such doubts.

#### 1)     Failure to Address L.P.'s Substance Use Disorder

UBH failed to consider L.P.'s substance use disorder as an independent condition that could render her treatment at either Summit or Uinta medically necessary. The Tenth Circuit has

---

to de novo review under the 2002 amendments."). Because the court determines that UBH's denial of benefits was improper even under an arbitrary and capricious review, it need not reach the question of whether the "substantial compliance" doctrine still applies under the 2002 ERISA regulations.

repeatedly held that a claim administrator's denial of benefits is only entitled to a "deferential standard of review to the extent the administrator actually exercised a discretionary power vested in it by the terms of the Plan." *Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012); *see also LaAsmar*, 605 F.3d at 798 (holding that a "plan administrator is not entitled to the deference of arbitrary and capricious review when . . . the administrator made no decision to which a court may defer" (citations omitted)). The Tenth Circuit has also noted that, in the context of an administrator failing to issue a decision responding to the claimant's appeal of denial of benefits, "[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003). As this court discussed in *Raymond M. v. Beacon Health Options, Incorporated*, 463 F. Supp. 3d 1250, 1269 (D. Utah 2020), the same reasoning applies with equal force here. Where a claims administrator cites one condition in denying benefits for lack of medical necessity but fails to make a determination of medical necessity for a second, independent condition, the administrator has similarly "failed to apply his expertise to a particular decision." *Id.* (quoting *Gilbertson*, 328 F.3d at 632). Because "a deferential standard of review [is] appropriate when a trustee exercises discretionary powers," if an administrator fails to exercise discretion by neglecting to rule on an independent basis for the claimant's demand for benefits, then a deferential standard is no longer appropriate. *Firestone Tire*, 489 U.S. at 111.

There is no question that L.P. suffered from a substance use disorder. The record indicates that L.P. regularly used several substances, including "taking several [OxyContin] pills per day," "drink[ing] heavily almost every weekend," "getting high three or more times per week," and "getting high daily" during the summer. Rec. 497. L.P. was suspended from her softball team after a teacher found alcohol in her backpack, and L.P. herself acknowledged that she "repeatedly . . .

went to school after drinking or using drugs." *Id.* 489, 2717. L.P.'s parents reported that she had been driving under the influence of cannabis, once causing her to crash the family's car. *Id.* 974. Physicians who saw L.P. before her family decided to admit her to Summit were concerned about L.P.'s substance use. L.P.'s treating psychologist reported that she "has had significant opioid drug involvement." *Id.* 972. The psychologist who evaluated L.P. prior to admission to RTC noted that she abused both marijuana and cocaine and recommended "[a]ssesment of and possible treatment for her substance abuse." *Id.* 604. After testing, he diagnosed L.P. with "other substance abuse disorder – moderate." *Id.* 619.

The record further demonstrates that L.P. was diagnosed with a substance use disorder and that she sought treatment, in part, for that condition at Summit and Uinta. L.P.'s initial treatment plan at Summit indicated that one of the reasons for her admission to Summit was substance use. *Id.* 1066-67. Once admitted to Summit, testing by a psychologist confirmed a diagnosis of cannabis use disorder and noted that L.P. was "at significant risk for developing more serious addictions." *Id.* 495, 2718-19. The testing psychologist insisted that "part of her long-term treatment plan must include substance abuse specific counseling." *Id.* 2718.

L.P.'s experience at Uinta was similar. L.P.'s initial treatment plan for Uinta indicates that, once at Uinta, a provider made a preliminary diagnosis of "[o]ther substance abuse disorder, [m]oderate." *Id.* 3380. Among the reasons for admission, her initial treatment plan lists "smoking marijuana and using cocaine." *Id.* 3381. Therapy notes from Uinta indicate that L.P. discussed her addiction during therapy and "was given recovery work in the session and as homework." *Id.* 3341. And Uinta reported that one of the justifications for continued treatment of L.P. was that L.P. shared "that she would use substances if she were to leave treatment at this point." *Id.* 3396. In sum, the

record clearly put UBH on notice that L.P. had a significant substance abuse issue for which she sought treatment at both Summit and Uinta.

UBH's initial denial letter for L.P.'s stay at Summit denied benefits due to lack of preauthorization. *Id.* 532-34. However, UBH abandoned its preauthorization argument and instead relied on medical necessity in all subsequent denial letters. But each of the five subsequent denial letters sent by UBH's reviewers fail to mention any reason why RTC care for L.P.'s substance use disorder was not medically necessary. Instead, UBH relied exclusively on statements related to the medical necessity of mental health treatment. In UBH's first-level review denial letter for L.P.'s stay at Summit, the reviewer found that "[t]here is no clinical information received that indicates that your daughter required 24 hour monitoring to treat acute mental health symptoms" and noted that "her mood and anxiety symptoms could have been treated in a less intensive setting." *Id.* 448-49. For support, the reviewer stated that "[s]he did not want to hurt herself" and "[s]he did not want to hurt others." *Id.* In their level-two appeal regarding the Summit claim, Plaintiffs provided various evidence of L.P.'s extensive substance use disorder, including reports by several professionals who had assessed L.P. *Id.* 486-508. UBH then affirmed the denial of benefits for Summit in a second-level review, finding no support for "treatment in a psychiatric residential setting." *Id.* 474.

In the initial denial of her Uinta claim, the UBH reviewer stated that L.P. "was admitted for treatment of impaired behaviors" and her condition no longer met the guidelines for coverage because L.P.'s "mood was more stable" and "[s]he was not having any serious mental health issues." *Id.* 1694. UBH outlined a similar rationale in its first-level review that affirmed the initial benefit denial, saying that L.P. "was admitted for treatment of impaired behaviors and poor coping skills" and giving identical reasons for why L.P.'s condition no longer met guidelines for coverage.

*Id.* These rationales underscore that the UBH reviewer indicated to the Plaintiffs that the reviewer exclusively considered the medical necessity of treatment for L.P.'s mental health disorders, not her substance abuse disorder.

In its second-level review of L.P.'s Uinta claim, UBH acknowledged L.P.'s substance use disorder to Plaintiffs for the first time. The reviewer stated that L.P. was "admitted for treatment of problems with your mood, behavior, and addiction." *Id.* 2306. But none of the reasoning contained in the reviewer's letter addresses the medical necessity of RTC care for L.P.'s substance use disorder. Rather, each rationale either directly relates to mental health (i.e., "[y]ou were not thinking about hurting yourself or others") or represents a vague, conclusory statement not evidently tied to treatment of a substance use disorder (i.e., "[y]ou were thinking clearly"; "[y]ou were motivated"; "[y]ou were able to take care of your needs"). *Id.* 2307. Nowhere in the letter does the medical reviewer provide a rationale for denying the medical necessity of RTC care specific to L.P.'s substance use disorder. This single acknowledgment of L.P.'s substance use disorder is the only instance in which a UBH reviewer recognized L.P.'s substance use diagnosis in its dialogue with Plaintiffs. And nowhere in the initial denial stage or appeals process for either claim did UBH provide any analysis concerning the medical necessity of treatment for that condition.

The court acknowledges that the reviewer from AllMed Healthcare Management, the company hired to conduct the external review of Plaintiffs' Summit claim, recognized her history of substance abuse and in the rationale section found that "[t]here were no drug withdrawal symptoms noted." *Id.* 1572-73. This single rationale, provided by a reviewer outside of UBH, cannot excuse UBH's failure to consider how L.P.'s diagnosed substance use disorder might have made it medically necessary for her to receive RTC care at Summit or Uinta.

In sum, the record demonstrates that UBH's reviewers repeatedly failed to take L.P.'s substance use disorder into account when making determinations about the medical necessity of her treatment at Summit and Uinta, despite the fact that the Plan covers both outpatient and inpatient mental health and substance abuse care and Plaintiffs repeatedly raised L.P.'s substance use disorder and provided evidence of her substance use disorder in their appeals. *Id.* 98, 488-508, 2602-29. UBH's failure to address L.P.'s substance use disorder in its initial denial of benefits violates subsection (g) of ERISA's regulations because UBH failed to provide the "specific reason or reasons for the adverse determination" for benefits related to substance abuse care, 29 C.F.R. § 2560.503-1(g)(1)(i), and UBH failed to provide "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances," concerning the lack of medical necessity for RTC care for L.P.'s substance use disorder, *id.* § 2560.503-1(g)(1)(v)(B).

UBH further violated the ERISA regulations during the appeals process when Plaintiffs repeatedly raised L.P.'s substance use disorder on appeal, and UBH failed to respond. This falls short of the "meaningful dialogue"[2] that ERISA requires of administrators, including a "full and

---

[2] At oral argument, both parties urged the court to review *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580 (10th Cir. 2019) (unpublished). In *Mary D.*, the plaintiffs argued that defendants failed to engage in a meaningful dialogue during the administrative process. The court rejected plaintiffs' argument, holding that defendants met the regulatory requirements where they "cited lack of medical necessity as the specific reason for each denial; they referenced the residential-treatment criteria that governed the medical-necessity determination; and they provided clinical judgment supporting each denial." *Id.* at 589. This case differs from *Mary D.* in two respects. First, Defendants failed to cite *any* rationale for denying Plaintiffs' claim for L.P.'s substance use disorder. UBH only referenced L.P.'s addiction in the final denial letter for Plaintiffs' Uinta claim, after Plaintiffs had no further opportunity to engage with UBH reviewers. Rec. 2306. And as noted above, the letter fails to discuss medical necessity in relation to L.P.'s substance use disorder. Second, even the court in *Mary D.* noted that the ERISA regulations require "clinical judgment supporting each denial." 778 F. App'x at 589 (citing 29 C.F.R. § 2560.503-1(g)). But conclusory statements such as "[s]he is not having any serious mental health issues" and "[s]he did not want to hurt herself"—especially in light of L.P.'s continuing self-harm—cannot serve as clinical judgment to support the denial of L.P.'s psychiatric claim. Rec. 449, 2526. Unlike the denial letters in this case, the denial letter in *Mary D.* cited more specific evidence from the patient's medical record. *See* Appellant's Opening Brief at 19, *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580 (10th Cir. 2019) (No. 17-4195) ("You have not harmed yourself to such a degree that has caused serious medical problems."). Finally, the court notes that *Mary D.* is unpublished; further published guidance from the Tenth Circuit on what analysis qualifies as "clinical judgment" would benefit courts in this circuit. In the absence of such guidance, this court determines that UBH's conclusory statements are insufficient to serve as "an explanation of the

fair review," *Gilbertson*, 328 F.3d at 635, that "takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim," 29 C.F.R. § 2560.503-1(h)(2)(iv). Because UBH failed to render a decision concerning the medical necessity of RTC care for L.P.'s substance use disorder, "[d]eference to the administrator's expertise is inapplicable" and *de novo* review is warranted. *Gilbertson*, 328 F.3d at 632.

### 2)      Additional Procedural Irregularity

The court notes one additional serious procedural irregularity that it observed in its review of UBH's denial of benefits. Subsection (g) of the ERISA regulations requires claims administrators who deny benefits based on the lack of medical necessity to provide claimants with the "specific reason or reasons for the adverse determination," 29 C.F.R. § 2560.503-1(g)(1)(i), and "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances," *id.* § 2560.503-1(g)(1)(v)(B). During the adverse benefits determination process, Plaintiffs twice requested that UBH include specific references to the medical record to support its conclusion that L.P.'s treatment was not medically necessary. Rec. 487, 2306. None of UBH's five letters contain any specific references to L.P.'s medical record or the information provided in Plaintiffs' various appeals letters. Defendants instead offered conclusory statements about claimant's circumstances, without any indication of how they reached their conclusions. Such a failure is not a "single honest mistake," *Conkright v. Frommert*, 559 U.S. 506, 509 (2010), during the administrative process, but rather a repeated violation of ERISA's minimum procedures that require administrators to explain "the specific reason for such denial." 29 U.S.C. § 1133(1); *see also* 29 C.F.R. § 2560.503-1(g)(1)(i).

---

scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances." 29 C.F.R. § 2560.503-1(g)(1)(v)(B).

In conclusion, UBH's denial of benefits suffered from serious procedural irregularities that warrant *de novo* review. UBH failed to make a medical necessity determination about L.P.'s substance abuse, failed to engage in meaningful dialogue with Plaintiffs on appeal, and did not provide specific reasoning in its clinical judgment of medical necessity. Nevertheless, the court need not provide an extensive *de novo* review analysis here because UBH's adverse benefits determination fails even an arbitrary and capricious standard of review.

The court proceeds by first demonstrating that UBH's decision fails even under an arbitrary and capricious standard of review. Then, for the purposes of determining remedies, the court considers the proper remedy where, as is the case here, the administrator's decision is due no deference. Under such a circumstance, the court determines that an award of benefits—not remand—is the appropriate remedy.

## II.    ARBITRARY AND CAPRICIOUS DENIAL OF PLAN BENEFITS

In their motion, Plaintiffs make four arguments as to why the administrator's denial of benefits as to Summit and Uinta was arbitrary and capricious. First, they claim that Defendants abused their discretion when they denied L.P.'s claim for substance use disorder treatment without articulating any basis for doing so. Second, they argue that Defendants abused their discretion because L.P.'s treatment was medically necessary under the terms of the Plan. Third, they argue Defendants abused their discretion by disregarding L.P.'s treating providers' opinions. Fourth, they argue that Defendants abused their discretion by failing to articulate how they applied the terms of the Plan to L.P.'s medical history. Defendants respond that the two decisions to deny benefits were reasonable and based on substantial evidence in the administrative record.

The court notes that UBH appears to have abandoned the argument it outlined in its initial denial of L.P.'s Summit claim, that denial was appropriate based on Plaintiffs' failure to obtain

preauthorization prior to L.P.'s admission to Summit. Because UBH has not argued during the appeals process nor in this court that lack of preauthorization was the reason for its denial of benefits for care at Summit and Uinta, the court will not address that argument further. The court instead focuses on whether denying coverage for lack of medical necessity was arbitrary and capricious.

### A.  *Substance Use Disorder Treatment*

UBH's denial of benefits for L.P.'s care at Summit and Uinta was arbitrary and capricious because UBH failed to consider whether L.P.'s substance use disorder would necessitate RTC care independent of her mental health condition. A denial of benefits is arbitrary and capricious where the administrator fails to address "another independent ground for [benefits] presented in the record and specifically raised in [the claimant's] administrative appeal." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 806 (10th Cir. 2004). In *Gaither*, the administrator's "focus on whether [the claimant] had a psychologically disabling anxiety disorder apparently led them to overlook the signs of a potential drug use problem." *Id.* at 802. Because the administrator failed to "specifically consider[]" the independent basis—a potential drug use problem—for granting the claim, the court ruled the administrator's decision arbitrary and capricious. *Id.* at 806.

For the same reasons as in *Gaither*, UBH's denial of benefits was arbitrary and capricious because it failed to consider L.P.'s independent substance use disorder diagnosis. The Plan offers benefits for both mental health and substance abuse care. Rec. 213. The evidence in the record demonstrates that L.P. had a history of abusing several different substances prior to her admission at Summit. *Id.* 953, 972, 974. L.P. sought treatment at Summit for her substance abuse (among other things) and was evaluated for and diagnosed with cannabis use disorder at Summit. *Id.* 997, 1019, 1066-67. Providers at Summit recommended long-term treatment after discharge from

Summit, in part because of L.P.'s "intentions to continue substance use after treatment." Rec. 502, 991.

L.P. also received treatment for her substance use disorder at Uinta. *Id.* 3341, 3380-81. L.P.'s initial treatment plan for Uinta indicates L.P.'s diagnosis of "[o]ther substance abuse disorder, [m]oderate." *Id.* 3380. Among the reasons for admission, her initial treatment plan lists "smoking marijuana and using cocaine." *Id.* 3381. Therapy notes from Uinta indicate that L.P. discussed her addiction during therapy and "was given recovery work in the session and as homework." *Id.* 3341. On June 7, 2017—over three months after UBH denied further coverage for treatment at Uinta—her providers at Uinta noted that one reason for continued treatment at Uinta was that L.P. stated "that she would use substances if she were to leave at this point." *Id.* 3396. In sum, the record clearly put UBH on notice that L.P. had a significant substance abuse issue that was being treated at both Summit and Uinta.

Plaintiffs also repeatedly highlighted L.P.'s history of substance abuse in their appeals letters. *Id.* 489-91, 494-502, 2605-11, 2623, 2627. And in appeals letters regarding both the Summit and Uinta claims, Plaintiffs specifically noted that L.P. "has been diagnosed with substance use disorders by multiple professionals" but that UBH reviewers had "completely failed to acknowledge these diagnoses." *Id.* 505, 2627. L.P.'s parents requested that in future reviews, UBH "take into account [L.P.'s] need for treatment to address her substance use disorders. *Id.* 506, 2627.

Despite L.P.'s family's attempt to draw UBH's attention to L.P.'s substance abuse, UBH reviewers failed to even acknowledge L.P.'s substance use disorder until their final appeal denial. *Id.* 2306-07. Even then, the UBH reviewer simply noted that L.P. was admitted "for treatment of problems with your mood, behavior, and addiction." *Id.* 2306. The reviewer lists generic rationales

for denial of benefits, including "[y]ou were doing better," "[y]ou were motivated," and "[y]ou were thinking clearly." *Id.* 2307. It is unclear if these rationales were supposed to apply to L.P.'s mental health diagnoses or her substance use disorder. In any case, they lack any factual grounding or citations to L.P.'s medical record. While the reviewer provided some rationales specifically related to L.P.'s mental health diagnoses (e.g., "[y]ou were not thinking about hurting yourself or others"), the reviewer failed to provide any rationale specifically related to why RTC care was not medically necessary to treat L.P.'s substance use disorder, thus failing to dispel the appearance that the reviewer never actually considered L.P.'s substance use disorder.

Just as in *Gaither*, UBH rejected Plaintiffs' claims for benefits concerning L.P.'s substance abuse "without a substantial basis for doing so, without following up on obvious leads, and apparently without specifically considering the claim at all." 394 F.3d at 806. Because of UBH's failure to consider an independent ground for benefits, UBH abused its discretion by making a determination that "was not the product of a principled and deliberative reasoning process." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (citation omitted).

### B.  *Treating Providers' Opinions*

"Nothing in [ERISA] itself . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when rejecting a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). At the same time, "administrators . . . may not arbitrarily refuse to credit claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834. The Tenth Circuit echoes this standard, also in the context of disability benefits, holding that "fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of

22

entitlement and when they have little or no evidence in the record to refute that theory." *Gaither*, 394 F.3d at 807.

Plaintiffs submitted several letters from treating physicians recommending residential care for L.P. *Id.* 953, 972, 975. Plaintiffs claim that Defendants did not acknowledge those letters in their denials. As an initial matter, the court finds that the claims administrators did at least acknowledge the treating professional's opinions. At each level of review for both claims, the reviewing physician noted that their review included either "appeal letters" or "your appeal request." *Id.* 448, 475, 1572, 1694, 2306. The appeal letters submitted by Plaintiffs included both excerpts containing recommendations from treating physicians and attachments including complete letters or reports from treating physicians detailing their opinions. Thus, the evidence shows that the claims administrators did not fail to acknowledge the treating professionals' opinions. But whether Defendants engaged with those opinions is an entirely separate question.

In this instance, the evidence demonstrates that UBH reviewers did not engage with L.P.'s treating providers' opinions when dialoguing with Plaintiffs. L.P.'s treating psychologist recommended hospitalization "[o]n numerous occasions" because he "feared she might be a danger to herself or others." *Id.* 972. He expressed his opinion that "[o]utpatient therapy and psychopharmacological treatment with [L.P.] and her family were insufficient to address her emotional, psychological, and physical needs." *Id.* Other professionals who evaluated L.P. prior to her admission at Summit recommended admission to residential therapy. *Id.* 953, 975. And her licensed clinical professional counselor at Summit told her parents that "[d]ue to [L.P.'s] history of self-harm, substance use, risky behavior, and recent identification of emerging Borderline Personality Disorder traits, [L.P.] will benefit from enrollment in a long-term residential treatment center." *Id.* 991. Similarly, the clinical psychologist who evaluated L.P. while at Summit agreed,

urging that "[g]iven the seriousness of these test findings, it is strongly recommended that following her discharge from Summit achievement, [L.P.] go on to a longer-term residential treatment program." *Id.* 1018-19. UBH had access to each of these opinions via Plaintiffs' appeals and the administrative record.

The denial letters entirely fail to engage with these opinions. None of the letters even reference the various professional opinions submitted by Plaintiffs in their appeal letters. In fact, in some instances the conclusory statements in the denial letters stand in direct contrast to L.P.'s treating providers' opinions. For example, the first-level denial of L.P.'s Summit claim states that L.P. "did not want to hurt herself." *Id.* 449. This stands in stark contrast to L.P.'s outpatient psychologist, who reported that she "had numerous episodes of cutting" prior to entering Summit, *id.* 972, and her therapist at Summit who reported concern about L.P.'s "high risk behaviors including self-harm, which is still occurring at Summit," *id.* 895. While the plan administrators need not have given special deference to these opinions, they were not entitled to "shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the [Plaintiffs'] theory of entitlement." *Gaither*, 394 F.3d at 807. The court thus finds that Defendants abused their discretion by not fairly engaging with L.P.'s treating professionals' opinions.

### C.    *Medical Necessity and Application of the Terms of the Plan to L.P.'s Medical History*

Plaintiffs contend that Defendants abused their discretion by failing to apply the specific terms of the plan to the claimant's medical circumstances. Plaintiffs support this argument by arguing that Defendants fail to cite specific provisions of the Plan or specific portions of L.P.'s medical records. Plaintiffs further argue that Defendants abused their discretion by failing to meaningfully engage with L.P.'s medical history, which Plaintiffs argue demonstrates that her

treatment was medically necessary. Defendants counter that each of UBH's five adverse benefit determination letters provide the reasons for their denial and the reviewers' clinical judgment for the denial.

The law is not very clear as to what level of specificity is required from claims administrators in applying a plan's terms to the medical records to determine medical necessity. The Tenth Circuit has found the denial of benefits arbitrary and capricious where a reviewer "failed to explain how [she] reached her conclusion," *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006); where administrators inappropriately relied on certain evidence while disregarding other evidence presented, *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1285-86 (10th Cir. 2002); and where the reviewers letters "contain[ed] nothing more than conclusory statements" and demonstrated a "lack of *any* analysis, let alone reasoned analysis," *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 706 (10th Cir. 2018) (unpublished).

This court has previously found coverage denials arbitrary and capricious where the denial letters "contain[ed] neither citations to the medical record nor references to the report by [Plaintiff's] doctors" and were instead "conclusory statements without factual support." *Raymond M. v. Beacon Health Options, Inc.*, 463 F. Supp. 3d 1250, 1282 (D. Utah 2020). In *Kerry W. v. Anthem Blue Cross Blue Shield*, this court rejected the following statements as conclusory: "you no longer need 24 hour structured care," "you are not positively participating in the program," and "you are no longer harming yourself [and] you are able to control your behaviors." 444 F. Supp. 3d 1305, 1313 (D. Utah 2020). Citing *Kerry W.*, this court also rejected conclusory statements in *Raymond M.*, such as the patient's "symptoms improved," she was not "psychotic or aggressive," and she had a "supportive family." 463 F. Supp. 3d at 1282.

The denial letters from UBH regarding Plaintiffs' Summit claim were even more cursory than the denial letters in *Raymond M.* and *Kerry W.* In their first-level denial, UBH stated that

> There is no clinical information received that indicates that your daughter required 24 hour monitoring to treat acute mental health symptoms. She did not want to hurt herself. She did not want to hurt others. It seems that her mood and anxiety symptoms could have been treated in a less intensive setting.

Rec. 448-49. In their second-level denial letter, UBH largely recapitulated the same statements, stating that

> You were admitted to a therapeutic boarding school, Summit Achievement. After reviewing the appeal documents, there was no clinical information provided to support the medical necessity for treatment in a psychiatric residential setting or to document the daily provision of residential treatment services.

*Id.* 475. The denial letters contain no specific citation to the medical record whatsoever. If the UBH reviewers did indeed "gather [and] examine relevant evidence" as required by *Kimber v. Thiokol*, they made no reference to that evidence—such as any report by any doctor that they relied on in reaching their conclusions—in their denial letters. 196 F.3d 1092, 1097 (10th Cir. 1999). Instead, the letters merely contain general statements about L.P.'s condition and treatment. The conclusory statement that L.P. "did not want to hurt herself" is particularly surprising, given reports by her outpatient psychologist that she engaged in significant self-harm before admission to Summit and reports by her treating therapist at Summit that she continued to self-harm while at Summit. Rec. 895, 972. L.P.'s Summit records also document a call home to her mother to "update her on [L.P.'s] left hand/forearm self harm," *id.* 910, as well as an incident of suicidal ideation at Summit that led staff "to look through her room for any potential objects she could hurt herself with" after L.P. "expressed thoughts of 'doing it tonight,'" *id.* 922. Finally, UBH provided no explanation for why it determined that RTC treatment was not medically necessary at Summit, but abruptly became medically necessary after L.P.'s discharge from Summit to Uinta. In light of the foregoing evidence in the record, absent some reference to L.P.'s medical record explaining how the reviewer applied

the Plan terms to L.P.'s circumstances to determine that L.P.'s condition did not merit care at an RTC, the court must find that UBH abused its discretion in denying L.P.'s Summit claim for lack of medical necessity.

While UBH's rejection letters for L.P.'s Uinta claim provide some rationales to support UBH's conclusion that L.P.'s goals of admission at Uinta had been met, the letters again fail to cite to any evidence in L.P.'s medical record to verify the rationales. The letters state that L.P. "is participating in her treatment" and "is not having any serious mental health issues." *Id.* 1694, 2526. They add that L.P.'s "mood is more stable" and that she "has made progress." *Id.* The second-level denial argues that L.P. was "doing better," was "stable from a medical and mental health standpoint," was "not thinking about hurting [herself] or others," was "thinking clearly," and was "motivated." *Id.* 2307. It further stated that L.P. was "participating in treatment and using the skills learned" and was "able to take care of [her] needs [and] go on leaves of absence" and that L.P. "had family support." *Id.*

Absent any citation to L.P.'s medical record at Uinta or factual findings by the reviewer to support these rationales, it is difficult to evaluate whether these rationales were reasonable assessments of L.P.'s then present condition. The initial denial letter states that the medical reviewer "talk[ed] to your child's provider designee" but fails to cite any specific statements by the provider that would support the reviewer's conclusion that L.P. "no longer needs the 24/7 care of a Residential setting." *Id.* 2526. Similar to the reviewers in *Raymond M.* and *Kerry W.*, UBH did not explain the "factual findings to support their conclusions," "did not offer any responses to the diagnoses and reports included by [the claimant] in her appeal," and "did not cite any reports by [UBH's] doctors or doctors at [Summit or Uinta] on which they relied in reaching their conclusions." 463 F. Supp. 3d at 1282-83; 444 F. Supp. 3d at 1313.

In contrast, there is evidence in L.P.'s medical record that she continued to struggle at Uinta. L.P. continued to hear screaming in her head, have panic attacks, display aggressive behavior, and self-harm. Rec. 2619-20. UBH needed to provide some reasoned analysis for why treatment at Uinta was no longer medically necessary based on factual findings from L.P.'s medical record. This is particularly important given that UBH considered RTC care medically necessary for L.P. during the first week of her stay at Uinta. UBH relied on conclusory statements instead of indicating facts in L.P.'s medical record that it relied on in determining that L.P.'s condition had— in only eight days—changed sufficiently to deny her claim. Thus, UBH abused its discretion by failing to apply the terms of the Plan to L.P.'s specific medical history to determine the medical necessity of care at Uinta.

### 1)    Internal Notes

Defendants urge the court to consider reviewers' internal notes, in addition to the denial letters, in determining the propriety of an adverse benefit determination. Defendants claim that these notes are more substantive and provide more detail regarding L.P.'s medical history and the reason why the UBH reviewers determined that treatment was not medically necessary. Plaintiffs counter that the court should limit itself to considering rationales specifically articulated in the denial letters, and refrain from considering internal documents like notes maintained by the reviewers.

Plaintiffs cite *Spradley v. Owens-Ill. Hourly Employees Welfare Benefit Plan* for the Tenth Circuit's proposition that in an ERISA case considering benefit denial "the federal courts will consider only those rationales that were specifically articulated in the administrative record as the basis for denying a claim." 686 F.3d 1135, 1140 (10th Cir. 2012). This citation leaves open the question of whether this court should look to any rationale articulated anywhere in the

administrative record, or only those rationales provided to Plaintiffs during the administrative process.

Defendants counter with *Tracy O. v. Anthem Blue Cross Life and Health Insurance Company*, where the Tenth Circuit affirmed a district court decision that considered reviewing physicians' internal notes to establish that the reviewing physicians reviewed the patient's treatment history and acknowledged the patient's past psychiatric history and self-injurious behaviors. 807 F. App'x 845 (10th Cir. 2020) (unpublished). But in the district court's decision, there is no indication that the Defendants used the internal notes to establish any rationales not already stated in the denial letters. No. 2:16-cv-422-DB, 2017 WL 3437672, at \*10 (D. Utah Aug. 10, 2017) (citing to the physician's internal notes for the conclusion that "in-patient treatment was not medically necessary" while the denial letters stated that "[t]he information your provider gave us does not show that this is medically necessary"). Rather, the internal notes were merely used to reiterate that the reviewers had, in fact, discussed the patient's treatment history with her provider, which was also stated in the denial letter. Moreover, in addition to lacking precedential value, the Tenth Circuit opinion made no explicit findings regarding the propriety of considering the internal notes of reviewers.

Like the parties, the court was unable to find any Tenth Circuit case law directly addressing the issue of whether to consider UBH reviewers' internal notes. Absent direct guidance, the court looks to the purpose of ERISA, which weighs in favor of requiring reviewers to fully state their rationales to claimants during the administrative process. ERISA and its regulations clearly require UBH to provide claimants with a written decision "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the [claimant]." 29 U.S.C. § 1133(1); *see also* 29 C.F.R. § 2560.503-1(h)(3). The purpose of this requirement is undermined "where plan

administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 129 (1st Cir. 2004) (citing *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000)). Requiring UBH to provide Plaintiffs with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992).

When faced with a request by defendants to consider internal notes, another court in this district has employed the First Circuit's test for "whether a plan administrator may defend a denial of benefits on the basis of a different reason than it articulated to the claimant during the internal review process." *D.K. v. United Behavioral Health*, 2:17-cv-01328-DAK, 2021 WL 2554109, at *11 (D. Utah June 22, 2021) (quoting *Glista*, 378 F.3d at 129). The *Glista* court considered: (1) whether traditional insurance law places the burden on the insurer to prove the applicability of a similar benefits exclusion rationale; (2) whether the plan expressly provided that participants must receive a written explanation of the reasons for the denial; (3) whether the administrator gave an explanation for why it failed to explain its unstated reason for denying the claim earlier; and (4) whether the facts of the situation require that the controversy be resolved quickly. *See id.* (citing *Glista*, 378 F.3d at 131). Relying on this test, the *D.K.* court held defendants to the rationales in their denial letter where the second and third *Glista* considerations were satisfied. *Id.* at *12. Similarly, in this case the Plan requires the administrator to provide the claimant with an initial written notice explaining "[t]he specific reasons for denial" as well as the specific reasons for denial on appeal Rec. 194.  And Defendants have not given any reason why they did not include their full reasoning for the denial in the letters sent to Plaintiffs. Without any reason justifying their

failure to explain their internal reasoning for denying L.P.'s claims, this court agrees with the *D.K.* court that Defendants cannot now rely on those rationales.

In light of the lack of guidance from the Tenth Circuit, the court relies on the underlying purpose of ERISA, along with the balancing test provided by the First Circuit, to decline to consider the physician's internal records for the purpose of determining the Defendants' rationales in denying L.P. coverage. The court instead considers whether the Defendants' decision was arbitrary and capricious based only on the "denial rationales articulated in the denial letters." *D.K.*, 2021 WL 2554109, at *12.

### 2)   External Reviewers

Finally, Defendants urge the court to consider rationales provided in letters from external reviewers, which Defendants claim provide detailed factual support and reasoned analysis for their determination that L.P.'s residential treatment was not medically necessary.  Defendants argue that the external reviewer reports constitute substantial evidence showing that UBH's final adverse benefit determinations were not arbitrary and capricious.

Defendants cite a series of cases where courts have referenced the external reviewers' conclusions in an opinion.[3] In one of these cases, the court gives no indication of what weight it accords the external reviewer's report. *Jeffrey F.*, 2017 WL 1424027, at *3.[4] In most of the other

---

[3] *Amy G. v. United Healthcare*, No. 2:17-cv-00427-BSJ, 2018 WL 2303156 (D. Utah May 21, 2018); *Jeffrey F. v. McGraw Hill Fin., Inc.*, No. 2:15-cv-00874-BSJ, 2017 WL 1424027 (D. Utah Apr. 20, 2017); *Mark M. v. United Behavioral Health*, No. 2:18-cv-00018-BSJ, 2020 WL 5259345 (D. Utah Sept 30, 2020); *Tracy O. v. Anthem Blue Cross Life and Health Ins.*, 807 F. App'x 845, 854 (10th Cir. 2020) (unpublished); *Brian C.*, No. 1:16-cv-93-DAK, 2017 WL 4564737 (D. Utah Oct. 11, 2017); *Robert O. v. Harvard Pilgram Health Care, Inc.*, No. 2:17-cv-1251-TC, 2019 WL 3358706 (D. Utah July 25, 2019).

[4] Defendants cite *Brian C.*, 2017 WL 4564737, for the proposition that "independent external reviewer reports have been considered by both the Tenth Circuit and courts in this District as additional substantial evidence supporting claim administrators' final adverse benefit determinations." ECF No. 53, p. 10. But in *Brian C.*, the court states that Plaintiffs sought an "initial review," "formal reconsideration," "a level one appeal," and a "level two appeal." *Id.* at *2. There is no indication that any level of review was conducted by an external reviewer.

cases, the court independently found that the administrator's determination was not arbitrary and capricious, and simply used the external reviewer's decision as confirmation. *See, e.g.*, *Amy G.*, 2018 WL 2303156, at *5 ("The court finds that such determination [by United] was not arbitrary and capricious . . . [a]nd indeed, the external review performed by an additional health care professional similarly determined that treatment at a residential treatment facility was not appropriate."); *Mark M.*, 2020 WL 5259345, at *12; *Tracy O.*, 807 F. App'x 845, 854 (10th Cir. 2020). Only one case cited by the Defendants "credits the opinions of the independent medical reviewers" to determine that treatment was not medically necessary. *Robert O.*, 2019 WL 3358706, at *11. But *Robert O.* provides little information about the rationales given by the internal reviewers, so this court is unable to determine whether the external reviewer merely confirmed the internal rationales or provided additional, independent reasoning for the medical necessity determination. And, of course, *Robert O.*'s reasoning is not binding on this court. As such, this court gives little weight to the *Robert O.* court's use of the rationales of external reviewers.

While it is true that an external reviewer's approval of the plan administrator's benefits determination can provide some indicia that the administrator's determination was reasonable, the administrator's determination must stand on its own. Stated in other terms, the rationales provided in the five UBH letters must independently demonstrate that UBH's final benefits determination was not arbitrary and capricious. The operative question is whether the determination by UBH— not the determination by external reviewers—was an abuse of discretion under the arbitrary and capricious standard. *See* 29 C.F.R. § 2560.503-1(g)(1). Rationales and factual evidence later cited by external reviewers cannot salvage deficient rationales or findings of fact provided by UBH. For that reason, while the court has considered the full administrative record, it has prioritized the

rationales laid out in UBH's five denial letters in ruling that UBH's determination was arbitrary and capricious.

For the foregoing reasons, the court concludes that the denials were arbitrary because, as in *McMillan v. AT&T Umbrella Benefit Plan No. 1*, UBH's letters demonstrate a "lack of *any* analysis, let alone reasoned analysis." 746 F. App'x 697, 706 (10th Cir. 2018) (unpublished). They consisted of "nothing more than conclusory statements" without any specific citation to facts in the record that would support the reviewers' medical necessity determinations. *Id.*

## II.     PARITY ACT VIOLATION

Plaintiffs additionally claim that UBH violated the Mental Health Parity and Addiction Equity Act ("the Parity Act") by placing treatment limitations on coverage for mental health conditions that are not placed on medical and surgical conditions. Defendants deny any Parity Act violation, stating that Plaintiffs have adduced no evidence that Defendants apply restrictions to treatment of mental health and substance abuse conditions that are not applicable to medical and surgical conditions. Because the court finds that reversal of UBH's benefits decision is appropriate on the basis that the determination was arbitrary and capricious, the court does not reach the issue of whether Defendants violated the Parity Act.

## III.    REMEDY

Plaintiffs request that this court enter a judgment ordering Defendants to pay for L.P.'s treatment at Summit and Uinta. Plaintiffs further request prejudgment interest and attorney's fees and costs. In the event that the court rules for the Plaintiffs, Defendants request that the court remand the claims back to UBH for further review. For the reasons discussed below, the court determines that awarding benefits is the appropriate remedy where the plan administrator's

decision is due no deference, and, further, that an award of benefits would be appropriate even were the case subject only to arbitrary and capricious review.

### A.    *Award of Benefits*

 The court has catalogued copious evidence that UBH failed to consider in reaching its conclusion. As discussed above, Defendants' failure to consider this evidence warrants a reversal of UBH's decision under arbitrary and capricious review. And considering this same evidence under a *de novo* standard, the court concludes that Plaintiffs are entitled to an award of benefits. Where the *de novo* standard applies, the court is required to make "an independent determination of the issue." *See United States v. First City Nat'l Bank*, 386 U.S. 361 (1967) (holding that "review de novo" means "that the court should make an independent determination of the issues"). Remand cannot be an appropriate remedy where the court has already made its own independent determination.

"When applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision." *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008) (unpublished) (citation omitted). For ERISA benefits claims, *de novo* "standard is not whether 'substantial evidence' or 'some evidence' supported the administrator's decision." *Id.* at 833. Rather, "it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's independent review." *Id.*; *see also Ray v. UNUM Life Ins. Co. of Am.*, 244 F. App'x 772, 782 (10th Cir. 2007) (unpublished) (approving of district court's application of preponderance of evidence standard).

The record before this court demonstrates that the evidence supporting Plaintiffs' claim for benefits easily reaches the preponderance of evidence standard. L.P. continued to experience suicidal thoughts and hear screaming in her head during her treatment. She expressed a desire to

continue using substances upon discharge. L.P. engaged in risky behaviors that caused her treating psychologist at Summit to strongly recommend longer-term residential treatment following Summit. She continued to self-harm at both facilities. In the court's judgment, the preponderance of the evidence (discussed in more detail above) establishes that L.P.'s then "current condition [could not] be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care." Rec. 442. Thus, the Plaintiffs have carried their burden of demonstrating that L.P.'s treatment was medically necessary.

Were this case subject only to the arbitrary and capricious standard, the court would order the same remedy. Under the abuse of discretion standard, where "a denial of benefits based on the record was unreasonable," the Tenth Circuit has stated that "[a] remand of an ERISA action seeking benefits is inappropriate." *Ray*, 224 F. App'x at 781 (citation omitted); *see also Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288-89 (10th Cir. 2002) ("[A] remand for further action is unnecessary [if] the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."). In determining that UBH's decision was unreasonable, the court weighs heavily L.P.'s stated desire to continue using substances after discharge. L.P.'s treating psychologist at Summit placed her at a significant risk of developing more serious addictions. In this court's experience, individuals with substance use disorders are at a high risk of relapse, even with a strong commitment to sobriety. L.P. lacked any such commitment. Therefore, the decision to step L.P. down from the structured RTC environment to a partial hospitalization program, where she would have had access to substances and could potentially have caused herself serious harm, was unreasonable.

And remanding the matter back to UBH for further process would "create an unfair 'heads we win; tails, let's play again' system of . . . benefits adjudication." *Tam v. First Unum Life Ins.*

*Co.*, 491 F. Supp. 3d 698, 712 (C.D. Cal. 2020) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)) (refusing to remand in the disability benefits determination context). Allowing the Defendants multiple bites at the proverbial apple discourages them from engaging in meaningful dialogue with claimants in the first instance, which undermines one of the core purposes behind ERISA: "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *see also Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009) (noting that "ERISA's stated purpose[ ]" includes "protecting the interests of participants in employee benefits plans and their beneficiaries by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans" (alterations and citation omitted)).

Accordingly, this court declines to remand the claims back to UBH and instead awards benefits for the duration of L.P.'s stay at Summit and Uinta.

### B.    *Prejudgment Interest*

Under ERISA "prejudgment interest is available in the court's discretion" because ERISA permits a plan participant to seek "appropriate equitable relief." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (alteration and citation omitted); *see also* 29 U.S.C. § 1132(a)(3)(B); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002) ("The award of prejudgment interest is considered proper in ERISA cases."). In ERISA cases, "prejudgment interest should run from the date the claim for benefits was first filed." *Caldwell*, 287 F.3d at 1287.

The court determines that prejudgment interest is appropriate in this case to compensate Plaintiffs for "being deprived of the monetary value of [their] loss from the time of the loss to the payment of the judgment." *Id.* at 1286 (affirming a grant of prejudgment interest). Accordingly, the court GRANTS Plaintiffs' request for prejudgment interest.

### C.   *Attorney's Fees and Costs*

Under 29 U.S.C. § 1132(g)(1), a court "in its discretion may allow a reasonable attorney's fee" when a "claimant has achieved 'some degree of success on the merits.'" *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)). The Tenth Circuit has established five factors a court may consider in deciding whether to exercise its discretion to award attorney's fees and costs:

> (1) The degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* The factors are flexible. "No single factor is dispositive and a court need not consider every factor in every case." *Id.*

Here, Plaintiffs have achieved success on the merits. The court elects to exercise its discretion to permit an award of attorney's fees and costs. Although the court has not ruled that UBH acted in bad faith in denying benefits, UBH was culpable in failing to properly evaluate Plaintiffs' claims for benefits and provide reasoned explanations for its determinations. UBH has the ability to satisfy an award of fees, and an award of fees here may serve to encourage UBH and its peers to engage in a "meaningful dialogue" with claimants in the future. For these reasons, the court will award appropriate attorneys' fees to Plaintiffs for work performed by Plaintiffs' counsel as defined by 28 U.S.C. § 1920. Within twenty-one days of this order, Plaintiffs' counsel should submit a petition for attorneys' fees and costs, including an affidavit indicating a calculation of fees with an accounting of time and costs.

**ORDER**

For the foregoing reasons, the court DENIES the Defendants' motion for summary judgment and GRANTS Plaintiffs' motion for summary judgment. Specifically:

1. Defendants' motion for summary judgment (ECF No. 37) on UBH's decision to deny benefits for L.P.'s treatment at Summit and Uinta is DENIED.

2. Plaintiffs' motion for summary judgment (ECF No. 39) regarding their claims for payment for L.P.'s treatment at Summit and Uinta is GRANTED. The court therefore does not address the parties' cross-motions for summary judgment on the Parity Act claim (ECF Nos. 66, 69) on grounds of mootness.

3. The court GRANTS Plaintiffs' request for an order awarding benefits under the plan. The court ORDERS that UBH's denial of benefits is REVERSED and further ORDERS that UBH pay Plaintiffs' benefit claim for Summit and Uinta.

   a. Plaintiffs' request for prejudgment interest on the benefits amount is GRANTED.

   b. Because the parties have not focused on the amount of the claim nor provided briefing on the issue of prejudgment interest, the court ORDERS the parties to meet and confer and submit a proposed joint judgment setting forth the amount of benefits and prejudgment interest due. If the parties are unable to agree on an amount, each party shall submit its own proposed judgment within twenty-one (21) days of this order.

4. Plaintiffs request for attorney's fees and costs is GRANTED. Plaintiffs' counsel should submit its petition for fees and costs within twenty-one (21) days of this order.

DATED September 29, 2021.

BY THE COURT

Jill N. Parrish
United States District Court Judge