Brian S. King, #4610
Samuel M. Hall, #16066
Brent J. Newton, #6950
**BRIAN S. KING PC**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID P., and L.P.,<br><br>   Plaintiffs,<br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, MORGAN STANLEY CHIEF HUMAN RESOURCES OFFICER, and the MORGAN STANLEY MEDICAL PLAN,<br><br>   Defendants. | PLAINTIFFS' MOTION TO REOPEN THIS CASE<br><br><br>Civil No. 2:19-cv-00225-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Plaintiffs David P. and L.P. hereby move the Court to reopen their case against Defendants United Healthcare Insurance Company ("United"), the Morgan Stanley Chief Human Resources Officer, and the Morgan Stanley Medical Plan (the "Plan").

## **OVERVIEW**

After this Court found that Defendants' denials of L.P.'s claims for mental health treatment were arbitrary and capricious, the Tenth Circuit Court of Appeals agreed, but determined that the Court had initially erred by granting benefits to Plaintiffs. Instead, the Tenth

Circuit remanded the case back to United, which it contended was a more appropriate procedural consequence of United's arbitrary and capricious behavior.

United seized on the remand as another opportunity to cursorily deny L.P.'s claims – this time by introducing denial rationales that it had never articulated during the initial prelitigation appeals process. Plaintiffs are entitled to judicial review of the remand process, an order reversing the denial of coverage, and an award of benefits to the Plaintiffs.

## RELEVANT PROCEDURAL POSTURE AND FACTS

The following facts are relevant and material to Plaintiff's motion to reopen this case.

### Basic Underpinnings of the Case

1. L.P. was a beneficiary under the terms of the Plan.[1]

2. Plaintiffs sought coverage for mental health treatment L.P. received at two successive residential treatment centers – Summit Achievement ("Summit") and Uinta Academy ("Uinta").[2]

3. United denied L.P.'s claims for all of the treatment she received at Summit and most of the treatment she received at Uinta.[3]

4. On cross-motions for summary judgment, the Court determined that United abused its discretion by denying L.P.'s claims for the treatment she received at Summit and Uinta and ordered United to pay benefits, then awarded the Plaintiffs their attorneys' fees and costs.[4]

5. United appealed.[5]

---

[1] *See David P.*, 564 F. Supp. 3d 1100, 1104-05 (D. Utah Sept. 29, 2021).
[2] *See id.* at 1105.
[3] *See id.* at 1108.
[4] *See id.* at 1125-26.
[5] *See generally David P. v. United Behavioral Health*, 77 F.4th 1293 (10th Cir. Aug. 15, 2023).

**The Tenth Circuit's Articulation of the Flaws in United's Past Denials**

6. The Tenth Circuit found that United's denials were arbitrary and capricious when it "failed to address whether L.P.'s treatment for substance abuse provided an independent ground for coverage" of L.P.'s claims.[6]

7. The Tenth Circuit further clarified that "it was clear from the record before [United] that Summit and Uinta were each treating L.P. for substance abuse."[7]

8. The Tenth Circuit then found that United's reviewers "never asserted" reasons for denying coverage relating to L.P.'s substance abuse.[8]

9. The Tenth Circuit also found that United erred when it "failed to engage with the opinions of L.P.'s treating care givers that she required treatment in an RTC."[9]

10. The Tenth Circuit further clarified that United had "never addressed" the opinions of clinicians who had treated L.P. "at all" but instead "inaccurately continued to assert that there [was] no information indicating L.P. required residential care."[10]

**The Tenth Circuit's Decision to Remand**

11. While the Tenth Circuit agreed with this Court that United had abused its discretion, it disagreed with the Court's decision to outright award benefits to Plaintiffs for the treatment L.P. received at Summit and Uinta.[11]

12. The Tenth Circuit rooted this disagreement in its perception that the Court had potentially misapplied the legal standard when evaluating United's denials.[12]

---

[6] *David P.*, 77 F.4th at 1309.
[7] *Id*. at 1310.
[8] *Id*.
[9] *Id*.
[10] *Id*. at 1312.
[11] *See generally David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293 (10th Cir. Aug. 15, 2023).
[12] *See id*. at 1315-16.

13. Specifically, the Tenth Circuit expressed concern that the Court had determined United's denials were arbitrary and capricious, but then had awarded benefits based on a "preponderance" standard that is not available on arbitrary and capricious review.[13]

14. Accordingly, the Tenth Circuit opted to remand the case to United for further proceedings.[14]

**The Limits the Tenth Circuit Placed on Remand**

15. After determining to remand the case, the Tenth Circuit put guardrails on the remand process:

    > Our remand, however, does not "provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record," *Carlile*, 988 F.3d at 1229 (citing *Spradley*, 686 F.3d at 1142), *and not previously conveyed to Plaintiffs*.[15]

16. For example, the Tenth Circuit noted earlier in its opinion that it would be inappropriate to consider "newly asserted reasons" United might offer explaining "why coverage for L.P.'s substance abuse treatment was not warranted under the Plan."[16]

17. The Tenth Circuit identified United's argument that L.P. had "stopped using drugs prior to entering Summit" as one of United's "newly asserted reasons" for denying coverage that would be inappropriate to consider.[17]

---

[13] *See id.*
[14] *See generally id.*
[15] *Id.* at 1315-16 (emphasis added).
[16] *Id.* at 1310 (citation omitted).
[17] *Id.*

18. The Tenth Circuit also identified United's argument that L.P. "was being treated at [Summit and Uinta] primarily for ADHD, not substance abuse" as another "newly asserted reason[ ]" for denying coverage that would also be inappropriate to consider.[18]

19. The Tenth Circuit also indicated that it would be inappropriate to consider arguments contained in United's internal notes, but not conveyed to Plaintiffs during the prelitigation appeals process.[19]

### How United Handled the Summit Claims on Remand

20. On remand, United sent a denial letter that gave the following reasoning for denying L.P.'s Summit claims:

> Based on a review of the available information, I have determined that coverage was not available for the member's treatment at Summit Achievement for dates of service 11/28/2016 through 02/13/2017.
>
> The member was being treated for problems with her mood, problems with her behavior, and problems with substance use.
>
> The request was reviewed. We looked at the member's case notes and the documentation provided by the requesting facility, Summit Achievement.
>
> The criteria for Mental Health Residential Treatment were not met because:
>
> The member was having some suicidal thoughts but the staff member's note on 11/29/2016 (FLN 8271808189898 page 243) did not describe any suicidal plan or active intent and stated that the member "verbally contracted for safety" and was able to participate with safety planning. She did not have any prior history of suicide attempts.

---

[18] *Id*.
[19] *See id*.; *see also id*. at 1313-14 (finding that United's internal notes could not be considered as a basis to deny L.P.'s claims).

The Psychological Assessment on 12/24/2016 (FLN 8271808189898 page 191) noted the member had "occasionally engaged in cutting behavior and cut on her arms and sometimes her leg." The note from the Admission Director dated 11/18/2016 (FLN 8271808189898 page 128) documenting communication with the member's father indicated that the cutting was "mostly superficial." That note also stated there was an incident around 11/5/2016 where the member cut more deeply but she did not require any medical attention and therefore, per CALOCUS criteria, this would be considered self-mutilation that was not significantly endangering to herself.

The Psychological Assessment on 12/24/2016 (FLN 8271808189898 page 192) noted that the member was in the 11th grade and stated "this year she has done pretty well in school. She is able to focus in classes and has been able to get her work done."

An Academic Update (no date provided, FLN 8271808189898 page 76) stated that the member had "completed most of the work received" from her school and described the member as "a highly capable student" when in the right mindset. The note also stated, "we have seen more emotional regulation in class" and that the member had "at times taken on the role of assisting other students with their work" and that the member was using "more healthy coping strategies" and was more able to express herself, noting "a much more positive trend" in the member's overall demeanor in the classroom.

The Psychological Assessment on 12/24/2016 (FLN 8271808189898 page 188) stated that prior to admission the member was using cannabis "three (3) or more times per week for the last six (6) months" and drinking "heavily almost every weekend" but that the member had not used any Oxycontin "since September or October (2016)." She reported using Methylenedioxymethamphetamine (MOMA) one time with her softball team and denied using any other drugs. The member was given a diagnosis of Cannabis Use Disorder with no other Substance Use Disorders noted.

The documents provided for the review did not contain individual or group therapy notes. It does not appear that there was a psychiatric evaluation completed at any point during the member's stay. Based on the information provided, it does not appear that the member received any mental health treatment during the member's stay.

6

The Psychological Assessment on 12/24/2016 (FLN 8271808189898 page 189) noted that she shared "close relationships" with her parents and that she stated of her father, "I trust that he wants the best for me too and is doing what he thinks is the best for me."

Per the Psychological Assessment on 12/24/2016 (FLN 8271808189898 page 192) the member reported her stay at Summit Achievement had been "super unhelpful." She stated that being at Summit heightened her anxiety worsened her suicidal thoughts. She stated that she felt lonely and unsafe from herself because she could not be happy at Summit Achievement.

I applied this information to the American Association of Community Psychiatrists Child and Adolescent Level of Care Utilization System (CALOCUS-CASII).

CALOCUS Evaluation Report

Requested Service Intensity Level: 5 Medically Monitored Residence Based Services

Recommended Disposition: 4 Medically Monitored Community Based Services

Clinical Decision: 4 Medically Monitored Community Based Services

Variance: No Variance: enter Rationale, and Action Plan below

Clinical Rationale and Action Plan: Based on the clinical information provided, CALOCUS scoring indicates that the member's condition did not meet criteria for Level 5 Medically Monitored Residence Based Services which is equivalent to a Mental Health Residential level of care. The service intensity recommended by CALOCUS was Level 4 Medically Monitored Community Based Services, which is equivalent to a Mental Health Partial Hospitalization Program.

Composite Score: 21

Dimension Score: 3 Risk of Harm

Dimension Score: 3 Functional Status

Dimension Score: 3 Co-Morbidity: Developmental, Medical. Substance Use and

7

Psychiatric

Dimension Score: 4 Recovery Environment (Environmental Stress)

Dimension Score: 2 Recovery Environment (Environmental Support)

Dimension Score: 3 Resiliency and Treatment History

Dimension Score: 3 Treatment Acceptance and Engagement

Child/Adolescent Subscale: 3 Parent/Caretaker Subscale: 2

*Risk of Harm [3]*

* Significant current suicidal or homicidal ideation with some intent and plan, with an ability for the child or adolescent and his/her family to contract for safety and carry out a safety plan. Child or adolescent expresses some reason not to carry out such behavior.

* Indication or report of incidents of acting without thinking, or physically or sexually aggressive actions that endanger self or others, breaking laws, self mutilation; running away, fire setting, violence toward animals.

* Binge or excessive use of alcohol and other drugs resulting in potentially harmful behaviors.

*Functional Status [3]*

* Conflicted, withdrawn, or otherwise troubled in relationships with peers, adults, and/or family, but without episodes of physical aggression.

* School behavior has deteriorated to the point of the child/adolescent has faced some school disciplinary action and is at risk for placement in an alternative school program.

* Chronic and/or variably severe deficits in interpersonal relationships, but with ability to engage in socially constructive activities, and ability to maintain responsibilities.

*Co-Morbidity: Developmental, Medical. Substance Use and Psychiatric [3]*

* Substance abuse is present, with significant adverse effect on functioning and the presenting condition.

*Recovery Environment (Environmental Stress) {4}*

* Difficulty avoiding exposure to substance use and its effects.

*Recovery Environment (Environmental Support) [2]*

* Family/primary caretakers are willing and able to participate in treatment if requested to do so and have capacity to effect needed changes.

*Resiliency and Treatment History [3]*

* Has demonstrated limited ability to follow through with treatment recommendations.

*Treatment Acceptance and Engagement (Child/Adolescent Subscale) [3]*

* Ambivalent, avoidant, or distrustful relationship with clinicians and other care providers.

* Acknowledges existence of problem, but resists accepting even limited age appropriate responsibility for development, perpetuation, or consequences of the problem.

* Minimizes or rationalizes distressing behaviors and consequences.

* Unable to accept others' definition of the problem and its consequences.

* Frequently misses or is late for treatment appointments and/or is not invested in treatment, including medication and homework assignments.

*Treatment Acceptance and Engagement (Parent/Caretaker Subscale) [*2*]*

* Works collaboratively with clinicians and other primary caretakers in development of treatment plan.

Because the issue of the member's substance use was raised, I also applied the ASAM criteria for assessment of Substance Use Disorders. Again, the documents provided for the review did not contain individual or group therapy notes. It does not appear that there was a psychiatric evaluation completed at any point during the member's stay. There was no documentation of any evaluation by an appropriately licensed medical practitioner at the facility to

9

assess for withdrawal, biomedical, and mental health risks. There was no evidence of *any specific* treatment provided to the member for any Substance Use Disorders. Therefore, based on the ASAM criteria for the ASAM 3.5 Clinically Managed High Intensity Residential level of care which is applicable to the Substance Use Disorders Residential Rehabilitation level of care (see below) this did not provide independent grounds for coverage of the member's stay at Summit. Below is the report from the ASAM Criteria Navigator of the assessment.

lnterQual® Review Summary

Criteria Status: Criteria Not Met

Created By: Uy, Jeffrey (Jeffrey-iq@https://sts.windows.net/db05faca-c82a-4b9d-b9c5-0f64b6755421/)

Created Date: 01-12-2024 02:54 PM PST

Facility: Optum ASAM

Criteria Product: The ASAM Criteria Navigator

Criteria Subset: Level 3.5 Clinically Managed Medium-Intensity Residential Services,

Adolescent

Criteria Version: lnterQual® 2023, July 2023 Release

Not Recommended

Current evidence does not support the following services

Medical Review Q & A

Review type, Choose one:

[X] Admission or transfer

The patient has been screened for withdrawal, biomedical and mental health risks. If risks have been identified, the patient has been assessed by an appropriately licensed medical practitioner, or this will occur prior to or at admission.

[X] No

> Additionally, correspondence from Robert Weaver, PhD on 1/9/2/17 (FLN8271808189898 page 156) indicated they felt that the member would "require longer term residential therapeutic treatment." We do not agree with this recommendation because Dr. Weaver did not address the fact that the member had reported that the member's stay at Summit was not helpful and was worsening the member's symptoms of depression and anxiety. Furthermore, Dr. Weaver's recommendation was not based on application of the American Association of Community Psychiatrists Child and Adolescent Level of Care Utilization System (CALOCUS-CASII) criteria. As previously discussed, CALOCUS scoring based on the information provided indicated that the member's condition did not meet criteria for Level 5 Medically Monitored Residence Based Services, which is equivalent to a Mental Health Residential level of care.[20]

**Notable Violations of the Tenth Circuit's Guardrails in the Summit Denial Letter**

21. The Tenth Circuit explicitly indicated that United was not permitted to deny L.P.'s claims based on denial rationales that it had not previously communicated to Plaintiffs during the prelitigation appeals process.[21]

22. Despite this, United's Summit denial letter articulated several *post-hoc* rationales for denying L.P.'s claims, including its determination that:

    a. L.P.'s substance use disorder did not render the treatment she received at Summit medically necessary;

    b. A new diagnostic tool, the CALOCUS-CASII, did not indicate that L.P.'s treatment was medically necessary;

    c. Dr. Weaver, L.P.'s treating clinician who opined she needed mental health treatment, was incorrect;

    d. Dr. Weaver failed to take relevant information into account when making his recommendation; and

---

[20] *See* Summit Denial Letter, attached as Exhibit "A," at pages 1-6.
[21] *See* Relevant Procedural Posture and Facts ¶¶ 15-19, *supra*.

11

  e. Dr. Weaver's opinion could be dismissed out of hand because he did not use the CALOCUS-CASII tool to draw his conclusions.[22]

23. The Tenth Circuit also explicitly found that "it was clear from the record before [United] that Summit" was "treating L.P. for substance abuse."[23]

24. Contradicting the Tenth Circuit's explicit finding of fact, United's denial letter claimed: "[t]here was no evidence of any specific treatment provided to [L.P.] for any Substance Use Disorders at Summit."[24]

### How United Handled the Uinta Claims on Remand

25. On remand, United sent a denial letter that gave the following reasons for denying L.P.'s Uinta claims:

> Based on a review of the available information, I have determined that coverage was not available for the member's treatment at Summit Achievement for dates of service 02/22/2017 forward.
>
> This is a 17-year-old female who was admitted to mental health residential level of care at Unita Academy on February 14, 2017, with a diagnosis of attention deficit hyperactivity disorder, other specified anxiety disorder, other specified depressive disorder and borderline personality disorder. The member had been at another residential facility from November 28, 2016, through February 13, 2017. Optum authorized residential treatment benefits from February 14, 2017 through February 21, 2017, authorized to do an initial assessment, and then made a noncoverage determination from February 22, 2017, forward.
>
> Summary of the Non-Urgent Appeal:
>
> It is noted at times that the member struggled with boundaries with peers and would be frustrated easily. She appeared to be responding to Adderall, but is unclear what dosage was being used. Throughout the treatment there did not appear to be any significant self-harm, aggression, or psychosis. No complicating medical

---

[22] *See generally* Exhibit A. Because United may not raise new rationales for denying L.P.'s claims, the Court should disregard these arguments when evaluating future dispositive briefing.
[23] *David P.*, 77 F.4th at 1310.
[24] *See* Exhibit A at 5.

issues were noted. An April 19th note showed that the member denied suicidal thoughts, and depression. She went on home visits in August, September, October, and November 2017. The member was generally cooperative with doing chores in the residential setting. She cooperated with equine therapy. Family was involved and supportive. There was no evidence of ongoing substance use.

No psychiatric assessment or progress notes were identified. It would be the expectation of residential treatment that the member be evaluated by a psychiatrist at least weekly throughout treatment.

We've denied coverage for mental health residential, where the member lives at the facility and get 24-hour care for the member's condition, as of 02/22/2017.

The member was being treated for Anxiety and depression.

The request was reviewed. We have denied the medical services requested because we reviewed the member's clinical case notes.

The criteria were not met because:

The member had no medical issues. She was taking her medications including Adderall. Her family was involved and supportive. She was not a danger to herself or others. The member participated in equine therapy and chores in the community. She had several home passes without significant issues. Her symptoms were stable and improving.

A progress note from June 13, 2017 (page 345 of FLN# 8271724389585) notes: "Lillian did really well in making sure that she was displaying a lot of effort during grooming today. She stepped up to help with the mares today and made sure they were getting groomed well. Lily also did a really great time of managing her time very appropriately and was able to get all responsibilities done on time". [sic]

Progress note from June 6, 2017 (page 317 of FLN # 8271724389585) notes: "Lilly was manager today. She was observed being assertive, effective, pleasant and fair with her peers."

The member's substance use issues were adequately addressed in individual therapy. She maintained sobriety. There was no evidence of the need for 24-hour monitoring related to substance use issues.

An lnterQual® ASAM criteria evaluation does not consider substance use disorder residential adolescent treatment appropriate for the member.

lnterQual® Review Summary

- Created By: Allchin, Theodore

- Created Date: 01/22/2024, 12:01 PM CST

- Facility: Optum ASAM

- Criteria Status: Criteria Not Met

- Criteria Product: The ASAM Criteria Navigator

- Criteria Subset: level 3.5 Clinically Managed Medium-Intensity Residential Services, Adolescent

- Criteria Version: InterQual 2023, July 2023 Release

The provider indicated that residential mental health treatment was indicated due to ongoing impulsivity issues and family conflict. It appears that these issues did not require 24-hour monitoring and did not put the member at risk. It appears that they could safely have been explored at a less restrictive level of care.

It does not appear that the treatment provided was consistent with the residential mental health level of care as there was no evidence of weekly psychiatric involvement.

CALOCUS-CASII guidelines, which are required to be followed, do not indicate the need

for mental health residential treatment and recommend treatment in a less restrictive level of care such as outpatient treatment.

Guideline Assessment

Requested Service Intensity Level: 5 Medically Monitored Residence Based Services

Recommended Disposition: 3 High Intensity Community Based Services

Clinical Decision: 4 Medically Monitored Community Based Services

14

Variance: Include a Clinical Rationale and Action Plan below

Clinical Rationale and Action Plan: given need to integrate patient back to home and family, would believe that mental health partial hospitalization would have been indicated

Risk of Harm: [3]

. • No active suicidal or homicidal ideation, but extreme distress and/or a history of suicidal/homicidal behavior

Functional Status: [3]

• Conflicted, withdrawn, or otherwise troubled in relationships with peers, adults, and/or family, but without episodes of physical aggression.

Co-Morbidity: Developmental, Medical. Substance Use and Psychiatric: [2]

• Occasional, self-limited episodes of substance use are present that show no pattern of escalation, with no indication of adverse effect on functioning or the presenting condition.

Recovery Environment (Environmental Stress): [2]

Expectations for performance at home or school that create discomfort.

Recovery Environment (Environmental Support): [2]

• Continuity of family or primary caretakers is only occasionally disrupted, and/or relationships with family or primary caretakers are only occasionally inconsistent.

Resiliency and Treatment History: [4]

• Child has demonstrated frequent evidence of innate vulnerability under stress and difficulty resuming progress toward expected developmental level.

Treatment Acceptance and Engagement (Child/Adolescent Subscale): [3]

• Ambivalent, avoidant, or distrustful relationship with clinicians and other care providers

Treatment Acceptance and Engagement (Parent/Caretaker Subscale): [1]

• Quickly and actively engages in a trusting and positive relationship with clinician and other service providers.

Guidelines /Policy /Criteria Used: American Association of Community Psychiatrists

CALOCUS-CASII Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII) for Level 5, which is applicable for the mental health residential level of care, The ASAM Criteria: Treatment Criteria for Addictive, SubstanceRelated, and Co-Occurring Conditions, Third Edition for the ASAM 3.5 Clin Managed Med Int Res (Adolescent) level of care.

Taking into consideration the available information and also the locally available clinical services, it is my determination that the requested services do not meet the American Association of Community Psychiatrists CALOCUS-CASII Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII) for Level 5, which is applicable for the mental health residential level of care, which is required to be followed in the member's behavioral health plan benefits, as of 2/22/2017.

Specifically, there were no complicating medical issues. It appears that the member was compliant with Adderall. There are no reports of significant self-harm, aggression, or psychosis. Family was involved in supportive. The member was cooperative with chores in the community and equine therapy. She had several successful home passes. Symptoms appear stable. There was no evidence of the need for 24-hour monitoring.

The Guideline/Policy/Criteria used for the decision is: The American Association of Community Psychiatrists CALOCUS-CASII Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII) for Level 5, which is applicable for the mental health residential level of care, and The ASAM Criteria: Treatment Criteria for Addictive, Substance-Related, and Co-Occurring Conditions, Third Edition for the ASAM 3.5 Clin Managed Med Int Res (Adolescent) level of care.

If the member would like general information about the guidelines used for this decision, please visit https://www.providerexpress.com/content/ope-provexpr/us/en/clinicalresources/guidelines-policies.html. To get a

copy of the specific guideline used for this decision free of charge, please call us at 1-866-556-8166.[25]

**Notable Violations of the Tenth Circuit's Guardrails in the Uinta Denial Letter**

26. The Tenth Circuit explicitly indicated that United was not permitted to deny L.P.'s claims based on denial rationales that it had not previously communicated to Plaintiffs during the prelitigation appeals process.[26]

27. Despite this, United's Uinta denial letter articulated several *post-hoc* rationales for denying L.P.'s claims, including its determination that:

    a. L.P.'s substance use disorder did not render the treatment she received at Uinta medically necessary;

    b. A new diagnostic tool, the CALOCUS-CASII, did not indicate that L.P.'s treatment was medically necessary; and

    c. L.P.'s claims could be denied because "[i]t does not appear that the treatment provided was consistent with the residential mental health level of care as there was no evidence of weekly psychiatric involvement."[27]

28. In addition, Plaintiffs' appeals concerning the treatment L.P. received at Uinta included letters from L.P.'s treating clinicians opining that she needed residential mental health treatment at Uinta.[28]

---

[25] *See* Uinta Denial Letter, attached as Exhibit "B," at 2-6.
[26] *See* Relevant Procedural Posture and Facts ¶¶ 15-19, *supra*.
[27] *See generally* Exhibit C. As it United may not assert new rationales for denying L.P.'s claims for benefits, the Court should not entertain these new denial rationales when considering new dispositive briefing.
[28] *See* Rec 2671-72 and 2690-91.

29. United's denial on remand did not acknowledge or address these opinions from L.P.'s treating clinicians, rendering its decision subject to reversal under controlling Tenth Circuit precedent.[29]

**ARGUMENT**

As a District of Utah court recently pointed out, "[g]enerally, when an ERISA case is remanded to the plan administrator for further proceedings, the decision on remand is reviewable by the District Court upon motion by either party."[30] Here, Plaintiffs move the Court to review United's remand decisions.

Moreover, in a different case involving United, *Anne A. v. United Healthcare Ins. Co.*, this Court provided its own interpretation of the Tenth Circuit's earlier precedent, noting that remand does not allow United to rely on "post-hoc reasons for denying benefits" but rather obligates them to "limit their review only to the rationales for denying benefits" that they articulated during the initial prelitigation appeals process.[31] Applying this reasoning strengthens Plaintiffs' argument for reopening this case. United has overstepped its bounds by using remand as an opportunity to invent *post-hoc* reasons for denying benefits that it never articulated to Plaintiffs during the initial prelitigation appeals process. The Court should re-open this case,

---

[29] Plaintiffs are fully aware that, because United had not addressed the opinions of treating clinicians previously, and because the Tenth Circuit barred United from raising rationales for denying Plaintiffs' claims on remand that it did not articulate during the prelitigation appeals process, United is doomed to be unable to produce a denial letter that is both within bounds and not an abuse of its discretion. This reinforces the importance of United following the rules during the initial prelitigation appeals process. Because United chose to flout those rules, it is now left with inadequate denial rationales and no meaningful way to make them more adequate. Actions have consequences.
[30] *Linda O. v. United Behav. Health*, 2024 U.S. Dist. LEXIS 8280, 2024 WL 170739, *2 (D. Utah Jan. 16, 2024) (collecting cases).
[31] 2024 U.S. Dist. LEXIS 55310, *26-27 (D. Utah March 26, 2024).

allow Plaintiffs to file a dispositive motion memorializing these facts, and then reverse United's denials and order payment of the benefits United has persisted in wrongfully denying.

## CONCLUSION

For the foregoing reasons, the Court should reopen this case. Plaintiffs anticipate they will be prepared to move for the Court to enter summary judgment against United – awarding benefits to Plaintiffs along with prejudgment interest, attorneys' fees, and costs – shortly after the case is reopened.

Dated this 3rd day of July, 2024.

/s/ Brian S. King
Brian S. King
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been delivered via the Court's electronic filing and case management system to all participants registered to receive it.

    Dated this 3rd day of July, 2024.

                                                              /s/ Brian S. King